UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

John Henry Foster Minnesota, Inc.,

       Plaintiff,

  v.                                Case. No.:

MSI Data, LLC,

       Defendant.

## COMPLAINT

Plaintiff John Henry Foster Minnesota, Inc. ("JHF"), for its Complaint against Defendant MSI Data, LLC ("MSI"), alleges as follows:

### INTRODUCTION

1.    This is a dispute arising from MSI's false and misleading representations about its software and services resulting in their failed implementation, for which JHF has paid $81,181.25 over a period of more than nineteen months and received nothing of value in return.

2.    MSI misrepresented that its software and services had the capability to be "seamlessly integrated" with JHF's existing system. Based on MSI's misrepresentations, JHF entered into the MSI Data SaaS Master Agreement (the "Agreement") with MSI, which required MSI to provide functional workforce automation software and related services to ensure their integrated implementation with JHF's existing system. Instead, MSI has provided non-functioning software and deficient services that cannot be integrated with JHF's existing system contrary to its representations and in violation of the Agreement's express terms and warranties, which has severely and negatively impacted JHF's business operations, efficiency, and net profits.

1

3.     JHF seeks an award of its damages in the amount of at least $81,181.25, plus additional compensatory, expectation, consequential, and other resulting damages, interest, attorneys' fees, and costs in an amount to be determined at trial, as well as an injunction prohibiting MSI from making false and misleading statements, and a declaration that the parties' agreement and relationship have terminated as a result of MSI's material breaches of the Agreement.

## PARTIES

4.     Plaintiff John Henry Foster Minnesota, Inc. is a Minnesota corporation with its headquarters and principal place of business located at 3103 Mike Collins Drive, Eagan, Minnesota 55121.

5.     Defendant MSI Data, LLC is a Wisconsin limited liability company with its headquarters and principal place of business located at 500 West Brown Deer Road, Suite 200, Bayside, Wisconsin 53217. Upon information and belief, Luminate Capital Management, Inc. is MSI Data, LLC's only member and it has no other members who are citizens of Minnesota. Luminate Capital Management, Inc. is a Delaware corporation with its headquarters and principal place of business located at 1 Letterman Drive, Suite CM, 500 San Francisco, California 94129.

## JURISDICTION AND VENUE

6.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

7.     The Court has personal jurisdiction over MSI because it agreed to "irrevocably and unconditionally submit to the jurisdiction of the federal and state courts located in Milwaukee County, Wisconsin" under Paragraph 11.5 of the Agreement, it is incorporated under the laws of

Wisconsin, it continuously and systematically conducts business in Wisconsin, and a substantial part of its acts related to JHF's claims took place in Wisconsin.

8.      Venue is proper in this judicial district under U.S.C. § 1391(b) because MSI agreed that "the federal and state courts located in Milwaukee County, Wisconsin" would be "the exclusive forum for any . . . suit, action, or other proceeding" under Paragraph 11.5 of the Agreement, MSI resides in this district, a substantial part of the events and omissions giving rise to JHF's claims occurred in this district, and MSI is subject to personal jurisdiction in this district.

## FACTS

9.      JHF engaged MSI in 2019 to provide field service automation software and services to support its transition to the next generation of mobile solutions. After more than nineteen months, however, it has become clear that MSI is incapable of implementing the software and services as it represented and promised to provide. The following sets forth facts regarding the parties' respective businesses, MSI's false and misleading statements, the Agreement's relevant terms, and MSI's failed implementation.

**John Henry Foster**

10.      JHF is a leading distributor and service provider for automation, compressed air, and robotic systems. JHF's products and services help companies automate their manufacturing processes through innovation and reliability.

11.      JHF employs a fully-equipped team of mobile technicians who provide evaluation, engineering, installation, integration, repair, and maintenance services throughout the Midwest including in Minnesota, Wisconsin, Iowa, South Dakota, and North Dakota. JHF's mobile technicians respond to a 24-7 emergency service line to help its customers avoid costly downtime.

3

12.     JHF's management of its mobile technicians is a critical component of its business. In order to respond quickly and reliably to customer needs, JHF's back office and field service operations must work together and exchange information efficiently and accurately to manage calls, work and sales orders, dispatch, contracts, warranties, customer information, and site location, as well as equipment and parts tracking, inventory, and pricing.

13.     Historically, JHF managed its field service operations with a system of documents, spreadsheets, and manual scheduling via phone calls and emails. JHF uses an enterprise resource planning ("ERP") software solution, Infor SX.e, to complete orders, process transactions, maintain customer information, and track parts and inventory.

14.     In 2018, JHF embarked on a project to automate its field service management operations with the next generation mobile software and devices. JHF specifically sought a solution that would integrate with its existing ERP system, Infor SX.e.

**MSI Data**

15.     MSI claims to provide "field workforce automation" software and services that "help organizations improve the productivity of their field workforce." MSI's flagship solution is "Service Pro," which purports to "[h]andle the full scope of field service business activities with ease, from customer calls and assets to orders, invoicing and reporting."

16.     According to MSI's website, Service Pro includes a mobile application that "works seamlessly with Service Pro software in the back office, placing the entire service team in communication throughout the work day," and enabling service technicians "to complete work orders and inspections with their phone or tablet." MSI advertises Service Pro in numerous "Free Educational White Papers" that deceptively claim to provide objective measures of success and selection criteria, such as a "Guide to Understanding ROI Calculations for Field Service

4

Automation," "Roadmap to Becoming a More Efficient Service Organization," and "Guide to Field Service Success," all of which biasedly conclude that Service Pro is the optimal solution.

17.    In order to obtain Service Pro's supposed benefits, MSI's website advertises to prospective customers by recommending that they choose a field service management solution that integrates with their ERP system. To this end, MSI claims:

> The best way to make data accessible to the right people in the company is to integrate each piece of the service puzzle. An integrated field service management (FSM) systems [hyperlinked to MSI's website describing "Service Pro All-in-One Field Service Software"] allows you to connect, collect, and centralize data for easy access from multiple areas of the operation . . . . Recent studies have found that service organizations utilizing (FSM) software complete more orders and turn more profit than companies using paper or manual methods. Since FSM systems are designed for service organizations, everything your service department needs is built into one system, and can integrate with your other enterprise solutions. The process—from data entry, to collection, to analysis—is joined with the rest of the office operations and flows exactly how you'd expect.

18.    MSI's website represents that Service Pro provides "field service to ERP integration," meaning that "Service Pro connects to [its] customers' accounting or ERP systems for end to end process automation." MSI touts its partnership with a network of ERP resellers who distribute Infor, the ERP system used by JHF, as allowing "turnkey" integration.

**MSI's False and Misleading Statements**

19.    While investigating Service Pro as a potential solution, JHF provided MSI with information about its business needs, field service management operations, and existing ERP system. Based on this information, MSI's Sales Manager, Steve Motte, responded by providing JHF with a presentation and proposal on December 19, 2018 to advertise and demonstrate the supposed capabilities of its software and services.

20.    During the presentation, MSI discussed the capability of its software and services to provide "Infor SX.e Integration." Like other customers, MSI knew that one of JHF's "Key

5

Needs" was the requirement for Service Pro to "Integrate to INFOR 'SX.e'," JHF's existing ERP system.

21.    MSI described Service Pro as an "End to End Field Service Platform," providing "Integration" between the "Enterprise Service Operations" of JHF's "Back Office" and the "Scheduling" and "Mobile" operations of JHF's field service. According to MSI, Service Pro would include a "Seamless Integration Engine."

22.    MSI's "Service Pro® Integrations Overview" represented that Infor SX.e would serve as the "[s]ystem of record for Customers, Equipment, Site Information and Parts / Inventory," transmitting this information to Service Pro, and allowing mobile technicians to return updates from the field. MSI's presentation displayed  branded graphics demonstrating its ability to satisfy JHF's integration needs.



23.     MSI represented that Service Pro had the capability to be integrated with Infor SX.e. During the presentation, MSI "clarified" its understanding of JHF's existing ERP system, represented it could utilize Infor SX.e's "data bus" to exchange information with Service Pro using an "API," and proclaimed, "I just know it works!"

24.     MSI provided JHF with a proposal that included "Standard Integration to Infor SX.e," and acknowledged, "clearly the integration is not optional." Based on MSI's representations, its unique and specialized knowledge about the capabilities of its software and services, and its "recommendations," JHF reasonably determined that MSI's software and services had the capability to integrate Service Pro with its existing ERP system, Infor SX.e.

25.     None of the forgoing representations by MSI turned out to be true. Despite more than nineteen months of effort, MSI has been unable to deliver functioning software and implementation services that integrated Service Pro with JHF's existing ERP system as represented by MSI.

**The Agreement**

26.     The parties entered into the Agreement on June 13, 2019, which is attached as Exhibit A. Under the Agreement, MSI agreed to provide software and services in exchange for JHF's payment of the amounts in the Order Form attached to the Agreement.

27.     Paragraph 1.1 of the Agreement requires MSI to provide JHF with a license to use "the MSI Data Services" and "the Mobile Device Software." Paragraph 10 of the Agreement defines these terms as "software as a service . . . that provides functionality related to workforce automation."

28.     Paragraph 3 of the Agreement requires MSI to "provide the services described in each SOW in the manner described in the SOW," defining the services as "professional,

7

implementation, maintenance, and/or consulting services (collectively, 'Professional Services') to support workforce automation efforts." The parties agreed that "[e]ach SOW will be considered a part of and an attachment to this Agreement."

29.     Paragraph 1.7 of the Agreement provides MSI's express warranties about its software and services:

> MSI Data warrants to customer that (a) the key features of the MSI Data Services and the Mobile Device Software will operate in substantial conformity with the Documentation during the term and (b) Professional Services will be provided by trained personnel in substantial conformity with MSI Data standard policies and the applicable SOW or Order Form.

Paragraph 10 of the Agreement defines the "Documentation" as "the user manuals provided by MSI Data that describe the Supported Devices and the features and functions of the MSI Data Services and the Mobile Device Software, the "Order Form" as the "initial order form attached to this Agreement," and Paragraph 3 defines the "SOW" as a "statement of work," which is "part of and an attachment to this Agreement."

30.      The Order Form attached to the Agreement provides for "Standard Integration to Infor SX.e," "Implementation," and other "Professional Services." According to the Order Form, a "[d]etailed statement of work will be written to further define requirements and effort at the beginning of the process."

31.     Over a period of nine months after the parties entered into the Agreement, MSI developed the SOW executed by JHF on March 19, 2020, which is attached as Exhibit B. MSI prepared the SOW based on its unique and specialized knowledge about the capabilities of its software and services, which JHF relied upon, as well as the information MSI obtained about JHF's business needs, field service management operations, and existing ERP system.

32. The SOW set forth the "Service Pro functionality that will be available in the Service Pro 10 software for JH Foster" as well as "the implementation services MSI will provide." According to the SOW, MSI's software and services had the capability to: "Improve efficiency," "Eliminate/reduce the need for tracking orders on paper," "Eliminate duplicate entry," "Improve and speed up the billing process," "Track assets in a structured way," and "Track warranties." The SOW guaranteed that "Service Pro standard functionality" would provide these capabilities without requiring any further customization.

33. The SOW set forth the "Scope of Work" and described "Service Pro 10 SP Sync Standard Integration" as "In Scope." The SOW displayed a graphic, similar to the one previously presented to JHF on December 19, 2018, demonstrating the integration "data flow" between Service Pro and the "System of Record," which was identified as "JH Foster's ERP."

34. According to the SOW, "Existing Customers, Sites, Equipment and Inventory Items are expected to be imported using the standard SP Sync workflow" and "Work Orders created in SP10 or Sales Orders created in the ERP that require Work Orders to be Created in SP 10 will flow across the SP Sync integration in both directions."

35. The "Service Pro Standard Functional Areas" included "Customer and customer site management":

> Customer data and customer location/site data to be imported into Service Pro via the standard data templates /ETL workflow. JH Foster's ERP will be the system of record for customer and customer location/site data. Addition or update of Customer and site details should be completed in the ERP first, which will then be available in Service Pro 10 . . . once the SP Sync Tool has received and processed the changes / updates."

36. The "Service Pro Standard Functional Areas," also included "Inventory Consumption and Tracking":

9

The JH Foster's ERP will be the system of record for inventory. Inventory management is conducted in the ERP. Such activities include: stock records for technicians' vans/trucks and warehouse, stock transfer, stock receipt, and other relevant business workflows. . . . Service Pro enables technicians to record materials and parts consumed in work orders on mobile devices. This data is then passed to the ERP as Sales Order line items via the SP Sync workflow.

37.     The SOW stated that MSI would perform "SP Sync connector installation on JH Foster's servers," which were located on "JH Foster's premises." The SOW provided that "[i]ntegration to any system other than JH Foster's ERP" was "Out of Scope."

38.     The SOW "budgeted for 30 days of implementation and training" and provided April 13, 2020 as the "Delivery Date" for "Deployment." Under the SOW, the "project will be considered complete when . . . [a]ll of the deliverables identified within this SOW have been completed, delivered and accepted or deemed accepted, including approved Change Requests."

**MSI's Failed Implementation**

39.     MSI has failed to implement its software and services by integrating them with JHF's ERP system. After more than nineteen months of effort, JHF is unable to utilize any of the capabilities of MSI's software or services as they were represented and promised by MSI, and MSI has provided nothing of value to JHF.

40.     Over a period of more than three months after JHF executed the SOW on March 19, 2020, MSI attempted to implement its software and services by integrating them with JHF's existing ERP system, Infor SX.e, as represented during its presentation on December 19, 2018 and promised in the Agreement, Order Form, and SOW.

41.     MSI had initially attempted to integrate Service Pro with Infor SX.e using a "flat file" integration type, contrary to its prior representations that it would use an application programming interface ("API") integration type. In response to concerns raised by JHF, MSI assured JHF that its flat file integration was tested and reliable.

10

42.     MSI's implementation, however, resulted in numerous technical issues and unreasonable delays that prevented its software and services from operating as it represented and promised.

43.     In early August, 2020, MSI admitted defeat. MSI informed JHF that it was unable to integrate Service Pro with Infor SX.e.

44.     On August 7, 2020, MSI explained it would be necessary to change the "Integration type" to "a middleware orchestration software that is cloud hosted by BirdDog Software [a third-party contractor] communicating to INFOR SX.e and Service Pro 10 via an Application Programming Interface" ("API"). MSI assured JHF that it would "begin deployment of the connector on 9/1," "the target for handoff of a fully completed integration to QA is Monday November 30th, 2020," and that it would "layout key milestones required for success," as well as "provide weekly updates that show progress against those metrics."

45.     Based on MSI's assurances and "recommendations," JHF agreed to amend the Agreement to pay an "annual recurring fee for enhanced API Integration" instead of an annual fee for "Standard Integration to Infor SX.e."  JHF and MSI executed the amendment on August 12, 2020.

46.     On September 11, 2020, MSI provided JHF with a "PROD Deployment Process" providing a "Status/Due" date of January 29, 2021 for "API Integration Deployment," when "MSI will complete building, testin[g], and deployment of a new API Integration with Integration Partner to JH Foster UAT." As of the date of this Complaint, however, MSI has not deployed any API connector integration solution to JHF.

47.     BirdDog Software, the third-party contractor MSI hired to perform its integrated implementation services, was also unable to integrate Service Pro with Infor SX.e. BirdDog

Software has given up on its efforts to develop an API connector integration solution that would integrate Service Pro with Infor SX.e.

48.     On October 1, 2020, MSI admitted it was not able to provide an API integration between JHF's existing ERP system and Service Pro.

49.     After more than nineteen months of waiting for functional and integrated software and services, there is still no end in sight. Despite JHF having paid $81,181.25, it is now clear that MSI is unable to deliver the software or services as it represented and promised to provide.

50.     The MSI Data Services, the Mobile Device Software, and the Professional Services do not provide "functionality related to workforce automation," do not operate in "substantial conformity" with the Documentation, SOW, or Order Form, are not as represented by MSI and specified in the SOW and Order Form, and they are not integrated with JHF's existing ERP system.

51.      Nevertheless, on December 10, 2020, MSI sent a letter to JHF incorrectly claiming that "JH Foster has communicated its intent to terminate the Agreement," and wrongfully demanding payment of $108,000 for "the remaining portion of the term of the Agreement." JHF, however, never provided notice of its intent to terminate the Agreement and MSI is not entitled to any additional payments as a result of its breach of the Agreement.

**COUNT I – VIOLATION OF WISCONSIN'S DECEPTIVE TRADE PRACTICES ACT**

52.     JHF incorporates and realleges the allegations contained in the paragraphs above.

53.     Wisconsin's Deceptive Trade Practices Act, Wis. Stat. § 100.18(1), provides that no person, with intent to induce the public to enter into any contract relating to the purchase of merchandise or service, shall make or cause to be made, in this state, a representation of any kind to the public relating to the merchandise or service that contains a representation or statement of fact that is untrue, deceptive, or misleading.

54.     Wis. Stat. § 100.18(11)(b) further provides that any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees.

55.     On MSI's public website and during its presentation and proposal to JHF on December 19, 2018, MSI made representations of fact to the public, including JHF, that Service Pro could be integrated with its customers' ERP systems, including JHF's existing ERP system, Infor SX.e.

56.     MSI made these representations with the intent to induce the public, including JHF, to purchase its software and services.

57.     MSI's representations that its software and services could be integrated with JHF's existing ERP system were untrue, deceptive, and misleading.

58.     MSI's representations that its software and services could be integrated with JHF's existing ERP system were made without the intent to perform and with the knowledge it was unable to perform.

59.     JHF reasonably relied on MSI's representations that its software and services could be integrated with JHF's existing ERP system, which were material to its decision to purchase MSI's software and services.

60.     As a direct and proximate result of MSI's representations, JHF suffered a pecuniary loss, including its payments of $81,181.25, plus interest, reasonable attorneys' fees, costs, and other resulting damages in an amount to be proven at trial.

## COUNT II – VIOLATION OF MINNESOTA'S FALSE STATEMENT IN ADVERTISING ACT

61.     JHF incorporates and realleges the allegations contained in the paragraphs above.

13

62.     Minnesota's False Statement in Advertising Act, Minn. Stat. § 325F.67, provides that no person, with intent to induce the public to enter into any contract relating to the purchase of merchandise or service, shall make or cause to be made, in this state, a representation of any kind to the public relating to the merchandise or service that contains a representation or statement of fact that is untrue, deceptive, or misleading.

63.     Minn. Stat. § 8.31 subdiv. 3a provides that any person injured by a violation of Minn. Stat. § 325F.67 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the Court, including an injunction.

64.     On MSI's public website and during its presentation and proposal to JHF on December 19, 2018, MSI made representations of fact to the public, including JHF, that Service Pro could be integrated with its customers' ERP systems, including JHF's existing ERP system, Infor SX.e.

65.     MSI made these representations with the intent to induce the public, including JHF, to purchase its software and services.

66.     MSI's representations that its software and services could be integrated with JHF's existing ERP system were untrue, deceptive, and misleading.

67.     MSI's representations that its software and services could be integrated with JHF's existing ERP system were made without the intent to perform and with the knowledge it was unable to perform.

68.     JHF reasonably relied on MSI's representations that its software and services could be integrated with JHF's existing ERP system, which were material to its decision to purchase MSI's software and services.

14

69.     The false and misleading representations that MSI makes on its public website and during its presentation to customers like JHF are harmful to the public such that there is a public interest in preventing MSI from making such representations.

70.     As a direct and proximate result of MSI's representations, JHF suffered damages, including its payments of $81,181.25, plus interest, reasonable attorneys' fees, costs, and other resulting damages in an amount to be proven at trial.

### COUNT III – VIOLATION OF MINNESOTA'S CONSUMER FRAUD ACT

71.     JHF incorporates and realleges the allegations contained in the paragraphs above.

72.     Minnesota's Consumer Fraud Act, Minn. Stat. § 325F.69, prohibits the act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby.

73.     Minn. Stat. § 8.31 subdiv. 3a provides that any person injured by a violation of Minn. Stat. § 325F.69 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the Court, including an injunction.

74.     On MSI's public website and during its presentation and proposal to JHF on December 19, 2018, MSI made representations of fact to JHF that Service Pro could be integrated with its customers' ERP systems, including JHF's existing ERP system, Infor SX.e.

75.     MSI made these representations with the intent to induce JHF to purchase its software and services.

15

76.     MSI's representations that its software and services could be integrated with JHF's existing ERP systems were untrue, deceptive, and misleading.

77.     MSI's representations that its software and services could be integrated with JHF's existing ERP system were made without the intent to perform and with the knowledge it was unable to perform.

78.     JHF reasonably relied on MSI's representations that its software and services could be integrated with JHF's existing ERP system, which were material to its decision to purchase MSI's software and services.

79.     The false and misleading representations that MSI makes on its public website and during its presentation to customers like JHF are harmful to the public such that there is a public interest in preventing MSI from making such representations.

80.     As a direct and proximate result of MSI's representations, JHF suffered damages, including its payments of $81,181.25, plus interest, reasonable attorneys' fees, costs, and other resulting damages in an amount to be proven at trial.

**COUNT IV – VIOLATION OF MINNESOTA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT**

81.     JHF incorporates and realleges the allegations contained in the paragraphs above.

82.     Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, provides that a person engages in a deceptive trade practice when, in the course of business, the person represents that goods or services have characteristics, uses, or benefits that they do not have, causes likelihood of confusion or misunderstanding as to connection with another, advertises goods or services with intent not to sell them as advertised, or engages in any other conduct that similarly creates a likelihood of confusion or of misunderstanding.

16

83. Minn. Stat. § 8.31 subdiv. 3a provides that any person injured by a violation of Minn. Stat. § 325D.44 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the Court, including an injunction.

84. On MSI's public website and during its presentation and proposal to JHF on December 19, 2018, MSI made representations of fact to JHF that Service Pro could be integrated with its customer's ERP systems, including JHF's existing ERP system, Infor SX.e, and by using infor branded graphics to confusingly and misleadingly demonstrate Service Pro's connection and integration capabilities.

85. MSI made these representations with the intent to induce JHF to purchase its software and services.

86. MSI's representations that its software and services could be integrated with JHF's existing ERP systems were untrue, deceptive, confusing, misleading, and they actually deceived JHF into misunderstanding and believing that they were true and not misleading.

87. MSI's representations that its software and services could be integrated with JHF's existing ERP system were made without the intent to perform and with the knowledge it was unable to perform.

88. JHF reasonably relied on MSI's representations that its software and services could be integrated with JHF's existing ERP system, which were material to its decision to purchase MSI's software and services.

89. The false, confusing, and misleading representations that MSI makes on its public website and during its presentation to customers like JHF are harmful to the public such that there is a public interest in preventing MSI from making such representations.

17

90. As a direct and proximate result of MSI's representations, JHF suffered damages, including its payments of $81,181.25, plus interest, reasonable attorneys' fees, costs, and other resulting damages in an amount to be proven at trial.

## COUNT V – BREACH OF CONTRACT

91. JHF incorporates and realleges the allegations contained in the paragraphs above.

92. The Agreement is a valid, enforceable contract entered into between JHF and MSI.

93. MSI fully performed its contractual obligations under the Agreement by making the payments required thereunder, which total $81,181.25.

94. MSI has materially breached its obligations under the Agreement for all of the reasons alleged in the preceding paragraphs, including its total failure to provide JHF with a license to use the MSI Data Services and the Mobile Device Software for "functionality related to workforce automation" and the Professional Services for "implementation, maintenance, and/or consulting services . . . to support workforce automation efforts" as described and specified in the SOW and Order Form.

95. Paragraph 11.5 of the Agreement provides that "[i]f any suit or other proceeding is brought, for the interpretation, construction, performance or enforcement of this Agreement or breach of any alleged dispute, breach, default or misrepresentation hereunder, then the successful or prevailing party shall be entitled to recover from the other party reasonable attorneys' fees and other costs incurred in connection therewith."

96. As a direct and proximate result of MSI's material breaches of the Agreement, JHF has suffered at least $81,181.25 in damages, plus interest, reasonable attorneys' fees, costs, and other compensatory, expectation, and consequential damages in an amount to be proven at trial.

18

## COUNT VI – BREACH OF WARRANTY

97.     JHF incorporates and realleges the allegations contained in the paragraphs above.

98.     The Agreement is a valid, enforceable contract entered into between JHF and MSI that contains express warranties, affirmations of fact, and descriptions of the goods and services that JHF relied upon in entering into the Agreement and were made part of the basis of their bargain.

99.     MSI fully performed its contractual obligations under the Agreement by making the payments required thereunder, which total $81,181.25.

100.    The key features of the MSI Data Services and the Mobile Device Software failed to operate in substantial conformity with the Documentation and MSI failed to provide the Professional Services in substantial conformity with its standard policies, the SOW, and the Order Form for all of the reasons alleged in the preceding paragraphs, including that MSI failed to provide "Standard Integration to Infor SX.e" for the MSI Data Services, the Mobile Device Software, and the Professional Services, depriving JHF of any functionality in substantial conformity with the Documentation, MSI's standard policies, the SOW, and the Order Form.

101.    Any remedy provided to JHF under the Agreement for MSI's breach of its warranties has failed of its essential purpose because MSI has been unable to remedy any breach after more than nineteen months of efforts, an unreasonable period of time under any commercial standard, and because MSI has wrongfully demanded payment of $108,000 for "the remaining portion of the term of the Agreement" instead of returning the amounts paid by MSI, which failure entitles JHF to all other remedies available under law, equity, and statute including Wisconsin's Uniform Commercial Code, Wis. Stat. ch. 402, for compensatory damages, expectation damages, incidental and consequential damages, and the cost of cover for substitute goods.

102.    Paragraph 11.5 of the Agreement provides that "[i]f any suit or other proceeding is brought, for the interpretation, construction, performance or enforcement of this Agreement or breach of any alleged dispute, breach, default or misrepresentation hereunder, then the successful or prevailing party shall be entitled to recover from the other party reasonable attorneys' fees and other costs incurred in connection therewith."

103.    As a direct and proximate result of MSI's breaches of its warranties, JHF has suffered at least $81,181.25 in damages, plus interest, reasonable attorneys' fees, costs, and other compensatory, expectation, and consequential damages in an amount to be proven at trial.

## COUNT VII – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

104.    JHF incorporates and realleges the allegations contained in the paragraphs above.

105.    Every contract, including the Agreement, implies a covenant of good faith and fair dealing between the parties and a duty of cooperation on the part of both parties.

106.    JHF fully performed its contractual obligations under the Agreement by making the payments required thereunder, which total $81,181.25.

107.    MSI has materially breached the Agreement's implied covenant of good faith and fair dealing for all of the reasons alleged in the preceding paragraphs, including its failure to exercise appropriate discretion and oversight in developing the SOW, providing the Professional Services in a timely and diligent manner, disclosing knowledge of implementation failures in a timely and complete manner, undertaking efforts to remedy its failed software implementation, and by demanding payment of $108,000 for "the remaining portion of the term of the Agreement" instead of returning the amounts paid by MSI, which constituted attempts to evade the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate with JHF's performance.

20

108.     Paragraph 11.5 of the Agreement provides that "[i]f any suit or other proceeding is brought, for the interpretation, construction, performance or enforcement of this Agreement or breach of any alleged dispute, breach, default or misrepresentation hereunder, then the successful or prevailing party shall be entitled to recover from the other party reasonable attorneys' fees and other costs incurred in connection therewith."

109.     As a direct and proximate result of MSI's material breaches of the Agreement's implied covenant of good faith and fair dealing, JHF has suffered at least $81,181.25 in damages, plus interest, reasonable attorneys' fees, costs, and other compensatory, expectation, and consequential damages in an amount to be proven at trial.

### COUNT VIII – DECLARATORY JUDGMENT

110.     JHF incorporates and realleges the allegations contained in the paragraphs above.

111.     Under 28 U.S.C. § 2201, "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

112.     A real and justiciable controversy exists between JHF and MSI with respect to MSI's material breaches of the Agreement and its termination for all of the reasons alleged in the preceding paragraphs, including MSI's incorrect assertion that JHF has terminated the Agreement and MSI's wrongful demand for payment of $108,000 for "the remaining portion of the term of the Agreement."

113.     JHF seeks a declaration that it has performed and not breached the Agreement, it has not terminated the Agreement for a reason other than MSI's breach, MSI has failed to perform and breached the Agreement excusing JHF from any further obligations under the Agreement,

grounds exist for JHF to terminate the Agreement as a result of MSI's material uncured breach, JHF's remedies under the Agreement have failed their essential purpose, and JHF is entitled to all other remedies available under law, equity, and state statute including Wisconsin's Uniform Commercial Code.

## REQUESTED RELIEF

Wherefore, JHF requests a judgment in its favor as follows:

1.      For an award to JHF in an amount equal to its damages of at least $81,181.25, plus additional expectation, consequential, and resulting damages, as well as interest, attorneys' fees, and costs in an amount to be determined at trial;

2.      For the declaration sought in Count VIII, and specifically Paragraph 113;

3.      An injunction prohibiting MSI from engaging in the unlawful and deceptive practices alleged in Counts II to IV, and specifically prohibiting MSI from advertising and representing that Service Pro has the capability to be integrated with the ERP systems of its customers like JHF; and

4.      Such other relief as the Court may deem appropriate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), JHF requests a jury trial of all issues so triable in this action.

Date:    February 4, 2021          By:   */s/ R. Henry Pfutzenreuter*
                                          R. Henry Pfutzenreuter (Minn. #0391468, E.D.
                                          Wis. admitted 1/28/2021)
                                          Larkin Hoffman Daly & Lindgren Ltd.
                                          8300 Norman Center Drive
                                          Suite 1000
                                          Minneapolis, Minnesota 55437-1060
                                          (952) 835-3800
                                          hpfutzenreuter@larkinhoffman.com

                                          Attorneys for Plaintiff

4814-3460-2200, v. 3

23